### A. B. HARRISON et al. v. STATE.

No. A-4337.   Opinion Filed April 7, 1924.
(224 Pac. 557.)

#### (Syllabus.)

**Appeal and Error—Conviction on Circumstantial Evidence not Disturbed.** A conviction for larceny resting on circumstantial evidence will not be disturbed by this court, where the defendants' explanations of admitted facts pointing to their innocence are in part disputed and where the explanations as a whole do not raise in the minds of the jury a reasonable doubt of their guilt.

Appeal from District Court, Custer County; Thos. A. Edwards, Judge.

A. B. Harrison and another were convicted of grand larceny, and they appeal. Affirmed.

Eugene Forbes and T. W. Jones, Jr., for plaintiffs in error.

The Attorney General and G. B. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. A. B. Harrison, Lige Bell, and Harvey Jones were jointly charged by information with the crime of grand larceny for the theft of a quantity of wheat from the bins of one H. B. Kaiser. At the trial Harvey Jones was granted a severance and the cause tried as to A. B. Harrison and Lige Bell only. These two defendants were found guilty as charged and, the jury failing to assess the punishment, were by the court sentenced to serve a term of two years' imprisonment in the state penitentiary.

These defendants, all negroes, were charged with the theft of a wagonload of wheat on the night of the ·25th of August, 1921. The conviction was based largely on circumstantial evidence, and the only error urged by defendants is that the evidence was insufficient to support the verdict; that it was insufficient to exclude every other reasonable hypothesis than the guilt of the defendants.

The prosecuting witness, a white man, had two bins of wheat in a granary in his field, and on the morning of the 26th of August, 1921, he discovered that some wheat had been taken from one of these bins on the night previous. One of the defendants, a negro neighbor, also had a bin of wheat on his premises from which it is claimed that a load of wheat was marketed by the two others, with his knowledge and consent, on the 26th of August, the day that the prosecuting witness discovered that some of his wheat had been taken. The issue of fact raised was whether the wheat sold by the defendants was their own, or was the wheat alleged to have been stolen from the prosecuting witness.

The state showed that there were tracks made by a wagon and two horses leading from the bins belonging to the prosecuting witness to the premises of one of the accused negroes and thence on to town where a load of wheat was

marketed by defendants early that morning. One of the horse tracks was made by a horse with a broken hoof, and it was shown that one of these defendants owned such a horse.

When the defendants were suspected of having committed the theft, some officers went to their home located between the home of the prosecuting witness and the town where the wheat was marketed, and the defendants were there interrogated by the officers and asked to explain what they knew about it. The defendants said that they had the evening previous loaded a wagon with wheat from their own bin and taken the wheat to market early that morning. To verify or discredit the explanation made by the negroes, the officers, late that afternoon, inspected the wheat in the negro's granary and looked for tracks thereabouts. They found that the upper surface of the wheat in the bins was dusty and that there were feathers and straw scattered about over its surface, indicating that the wheat in this bin had not been recently disturbed.

It was shown that there were on this negro's premises about 300 chickens and some turkeys which had access to this wheat bin, and defendants claimed that the surface condition of the wheat was due to the chickens feeding there and that the dust and particles of straw were blown there by the wind from the feed lot where the bin stood.

This bin or granary rested on a ledge of gyp rock, so that wagon or horse tracks adjacent could not be discerned, and it was claimed by defendants that cattle and horses in the lot had obliterated any tracks that might have been made leading from the gate up to this rock ledge upon which the bin stood. The testimony of the defendants, corroborated in some particulars by other witnesses both white and black, and by some circumstantial evidence, might be deemed to be a rational explanation indicative of their innocence.

The court fairly defined the rule applicable to the law of circumstantial evidence thus:

"* * * The guilt of the defendants must be proven by competent evidence beyond a reasonable doubt, and all the facts and circumstances proven should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis than that of his guilt, and sufficient to produce in your minds the reasonable moral certainty that the accused committed the offense charged against him."

Applying this rule to the proof, this case might be reversed but for the fact that there was some conflict in the defendants' evidence and some circumstances and testimony tending to impeach the story told by the defendants, making it a question solely for the jury, who were in better position than this court would be to weigh the evidence, some of which was demonstrative, and to pass upon the credibility of the witnesses who testified in their presence.

We are not unmindful of the fact that, where white and black people reside in the same community where larceny is committed, some member of the black race may be unjustly accused of the crime; but the record in this case does not disclose that the jury were in any degree influenced by passion or prejudice.

Bearing in mind that there was some demonstrative evidence and some conflict on disputed issues of fact, this court would not be justified in holding that such of the evidence as the jury deemed credible did not exclude every reasonable hypothesis other than the guilt of the accused.

The judgment of the trial court is therefore affirmed.

MATSON, P. J., and DOYLE, J., concur.